IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:08-CR-145 |
| v. | ) | |
| | ) | |
| CHRISTOPHER AMOS, | ) | (VARLAN/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Christopher Amos's Motion to Suppress and Request for Evidentiary Hearing [Doc. 28], filed on February 12, 2010 and referred [Doc. 31] to the undersigned on February 22, 2010. See 28 U.S.C. § 636(b). By way of background, the Court notes that the Defendant entered a guilty plea on April 2, 2009. Approximately three weeks later, the United States Supreme Court issued its opinion in Arizona v. Gant, 129 S. Ct. 1710 (2009). In May 2009, the Defendant moved [Doc. 15] to withdraw his guilty plea in order to litigate a suppression issue now available following Gant. The District Court permitted [Doc. 27] the Defendant to withdraw his guilty plea on January 5, 2010, and the instant suppression motion followed.

On March 29, 2010, the parties appeared before the undersigned for a hearing on the suppression motion. Assistant United States Attorney David P. Lewen appeared on behalf of the Government. Attorney Robert R. Kurtz represented the Defendant, who was also present. At the conclusion of the hearing, the Defendant requested the opportunity to file a post-hearing brief. The

1

Court found that such supplemental filings would be appropriate and granted the parties until April 12, 2010, to file supplemental briefs and until April 20, 2010, to file responses. The Defendant filed a post-hearing brief [Doc. 39] on April 11, 2010. The Government filed a responding brief [Doc. 40] on April 13, 2010. The Court took the motion, the evidence, and the parties' arguments and filings under advisement on April 14, 2010.

## I. POSITIONS OF THE PARTIES

The Defendant stands charged [Doc. 1] with being a felon in possession of a firearm on September 2, 2008. He asks [Docs. 31 and 39] the Court to suppress all evidence gained from the September 2, 2008 search of his car, arguing that the warrantless search incident to the driver's arrest violated the Fourth Amendment because both he and the driver were detained in a police car at the time. He asserts that the search of the car incident to arrest was unjustified because no possibility existed that either he or the driver could reach into the car to retrieve a weapon or destroy evidence. He maintains that the Supreme Court's holding in <u>Arizona v. Gant</u> applies retroactively to the search of his car. Finally, he argues that the good faith exception to the exclusionary rule does not apply in this case because <u>Gant</u> is a clarification of rather than a change in Fourth Amendment law, a police officer's interpretation of case law does not provide a basis to forego the exclusionary rule, and the facts of this case show the officer was not acting in good faith.

The Government agrees [Docs. 30, 35, 36, and 40] that the search of the Defendant's car incident to the arrest of the driver was unconstitutional under the rule in <u>Gant</u>. Nevertheless, it argues that the evidence seized during the search should not be suppressed because the officers were acting in good faith by searching in compliance with then existing case law. It contends that the

Court should not apply the exclusionary rule when there is no police misconduct to deter.

## II.  SUMMARY OF THE TESTIMONY

At the March 29, 2010 evidentiary hearing, the Government called Knoxville Police Department (KPD) Officer Brian Headrick, who had served as a KPD patrol officer for eleven years. Officer Headrick testified that around 12:30 a.m., on September 2, 2008, he stopped a car for a violation of regulations requiring that a vehicle's license tag be visible from fifty feet away and uncovered.  When he first pulled behind the car, it appeared to have no license tag.  As he drew closer, he saw that it did have a license tag but that the tag had a cover.  He stopped the car, approached the driver, Michelle Quigley, and requested her driver's license.  He learned that her driver's license was suspended, took her into custody, and placed her in the back of his patrol car. Officer Headrick called for backup and told the Defendant, who was the front passenger in the car, to remain in the car and to refrain from reaching around inside the car.  He then observed the Defendant reaching toward the back seat and attempting to get out of the car.  Once a backup officer arrived, Officer Headrick removed the Defendant from the car and placed him in the patrol car as well.

Officer Headrick stated that pursuant to his training at the police academy, he believed that he had the authority to search the passenger compartment of the Defendant's car incident to the driver's arrest.  He searched the car incident to Quigley's arrest and found a forty-five caliber handgun and oxycontin in the passenger compartment.  Officer Headrick testified that in April 2009, he learned during roll-call training that he could no longer search a car incident to arrest under <u>Arizona v. Gant</u>.  He stated that he was not aware of this rule at the time that he searched the

Defendant's car. Officer Headrick said that he had searched several hundred cars incident to an arrest in his career and that the evidence gained from those searches had never been suppressed.

On cross-examination, Officer Headrick testified that after he stopped the Defendant's car, the Defendant produced a driver's license, but Quigley could not produce one. He frisked and handcuffed Quigley and placed her in the back of his patrol car. He then ran Quigley's information on his in-car computer and arrested Quigley for having no driver's license. The Defendant had no outstanding warrants or holds against him. There was a dog in the car, and the Defendant let the dog out. The Defendant was about to get out of the car and his leg was coming out of the car when Headrick ordered him to stay inside. After Officer Foster arrived, the two officers removed the Defendant from the car, frisked him, handcuffed him, and took him to the patrol car. Both he and Officer Foster then searched the car.

Officer Headrick identified a KPD General Order [Exh. 1] on searching without a warrant. He agreed that this order was in effect at the time he stopped the Defendant's car. Officer Headrick read part III. A. of the General Order into the record: "A member who has made a lawful custodial arrest of an occupant of a vehicle may search the entire passenger compartment of that vehicle and may also examine the contents of any containers found within the passenger compartment of the vehicle. You may not search the automobile's trunk incident to the arrest of an occupant." He also read part III. B. into the record: "An officer making a lawful arrest may search areas under the immediate control of the subject, including a path of flight. The search must be confined to that area within which the arrestee could gain possession of a weapon or destroy evidence." Headrick stated that based upon his legal training he believed that he had an absolute ability to search the passenger compartment of a car and its contents incident to an arrest. On

redirect examination, Officer Headrick testified that he also searched the trunk of the car after finding a gun and narcotics in the passenger compartment.

## III.  FINDINGS OF FACT

The Court makes the following factual findings based upon the evidence presented at the suppression hearing:  On September 2, 2008, Officer Brian Headrick stopped the Defendant's car, in which the Defendant was a passenger, for an equipment violation.  The driver was arrested and placed in Headrick's patrol car in handcuffs for her failure to have a driver's license.  Although initially allowed to remain in the car, the Defendant was frisked, handcuffed, and placed in a patrol car after a backup officer arrived.  The two officers then searched the car incident to the driver's arrest and found a gun and oxycontin in the passenger compartment.  Based upon his prior training, Officer Headrick believed that he had absolute authority to search the passenger compartment of the car incident to an occupant's arrest.

## IV.  ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures.  U.S. Const. amend IV.  The Defendant challenges the warrantless search of his car, contending that (1) the car could not be searched incident to the driver's arrest as both he and the driver were detained in the backseat of the police cruiser and not within reach of the car, (2) the Supreme Court's holding in Arizona v. Gant must be applied retroactively to his case, and (3) the good faith exception to the exclusionary rule does not apply to a police officer acting upon his own subjective interpretation of case law and does not apply to the facts in this case.   The Court will address each

of these issues in turn.

## A. Fourth Amendment Violation

At the time of the instant search, an officer could search the passenger compartment of a car incident to an occupant's custodial arrest as an exception to the Fourth Amendment's requirement of a warrant. New York v. Belton, 453 U.S. 454, 460 (1981). Such a search incident to an arrest had to be "substantially contemporaneous with the arrest." Stoner v. California, 376 U.S. 483, 486 (1964); United States v. Barnett, 407 F.2d 1114, 1119-20 (6th Cir.), cert. denied, 395 U.S. 907 (1969). An officer could search the passenger compartment of a car incident to the defendant's arrest even when the officer did not stop the defendant until after the defendant had left his vehicle. Thornton v. United States, 541 U.S. 615, 621 (2004). In Thornton, the Court reasoned that the defendant was a "recent occupant" and that "[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." Id. An arrested individual who is "outside of, but still in control of, the vehicle" is no less likely to try to "lunge for a weapon or to destroy evidence" than an individual seated inside the vehicle. Id.

Last year, the Supreme Court changed the standard for searching passenger compartments that was previously contained in Belton, via its decision in Arizona v. Gant, 129 S. Ct. 1710 (2009). In Gant, the Supreme Court held that "Belton does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the

interior of the vehicle."[1]  Id. at 1714, 1719.  Accordingly, the Court affirmed the Arizona Supreme Court's holding that the seizure of cocaine from a jacket in the backseat of Gant's car pursuant to a search of the passenger compartment while Gant was handcuffed in the back of a patrol car following his arrest for driving on a suspended license violated the Fourth Amendment.  Id.

In the present case, the parties, and the Court, agree that the search of the Defendant Amos's car was unconstitutional under the holding in Gant, because the Defendant and the driver were detained in a police car at the time of the search.  Thus, the Court need not dwell any further on the facts of this incident because the parties have correctly agreed that the search in this case violated the rule in Gant.

## B.  Retroactivity

The parties also agree that Gant applies retroactively to this case, although for different reasons.  The Defendant argues that Gant merely clarifies what has been the law since Chimel, that searches incident to arrest are limited to situations in which weapons or evidence are within the defendant's reach.  Then, in what appears to be a logical leap, the Defendant argues that the Supreme Court's retroactivity case law requires that Gant be applied retroactively, presumably because it is a new constitutional rule (vs a clarification).  He argues that only this new rule, not the "remedy" law (or the good faith exception) applies retroactively.  Thus, he maintains that the evidence in his case must be suppressed like it was for the defendant in Gant.

---

[1]The Supreme Court in Gant also concluded that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle."  Id. at 1719.  The Court finds this prong of Gant is not applicable in the instant case, as the driver was arrested for driving with a suspended driver's license.

The Government argues that <u>Gant</u> applies retroactively because it is a new constitutional rule–a break with "nearly three decades of criminal law and law-enforcement procedure" [Doc. 40, p.1]. The Government also contends that both the new constitutional rule and the "remedy" (i.e., the existing law with regard to the exclusionary rule including the good faith exception) apply retroactively. Thus, although a Fourth Amendment violation occurred, the Court must still determine whether the good faith exception saves the evidence from suppression.

The Court need not dwell any longer on whether the constitutional rule in <u>Gant</u> is to be applied retroactively, as the parties have correctly agreed that it does apply retroactively. What the Court must dwell on and what the parties do not agree on is the effect of the retroactive application of <u>Gant</u>. The Defendant argues that this Court should not consider whether the officers acted in good faith because such an analysis would essentially undermine the concept of retroactive application. The Government on the other hand argues that the Court should engage in the traditional two-part analysis, which it references as the "Rule" and the "Remedy." The parties have both argued and briefed their respective positions and have both put forth persuasive arguments on this issue. While not technically a legal issue of first impression, it is an issue of "limited impression" which has arisen since <u>Gant</u>, with relatively few courts having decided the issue. For the reasons more fully explained below, the Court concludes that the two-part analysis governing the admission/exclusion of evidence applies. Under the "Rule" portion of that analysis, the search was unconstitutional, but under the "Remedy" portion of that analysis, the officers acted in good faith in reliance on then existing law and thus there is no basis for applying the exclusionary rule.

New constitutional rules apply retroactively to pending cases and those on direct review. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987). The Court of Appeals for the Sixth Circuit

has condoned applying the new Gant rule retroactively.  See United States v. Lopez, 567 F.3d 755, 757 (6th Cir. 2009) (noting that Belton would permit a search based upon the facts at issue but explaining "the Supreme Court has since changed the law," and applying Gant to find an unconstitutional search).  With the retroactivity of the constitutional rule thus established, what is the result:  Does the good faith exception apply to pre-Gant searches?  Whether the good faith exception excuses suppression of evidence discovered during pre-Gant searches, invalidated by Gant, has generated a circuit split.  See United States v. McCane, 573 F.3d 1037, 1044 (10th Cir. 2009) (holding good faith exception can excuse suppression when officers relied on that circuit's settled case law and finding good faith precluded suppression of evidence during a search later invalidated by Gant); see also United States v. Davis, 598 F.3d 1259, 1264-65 (11th Cir. 2010); contra United States v. Gonzalez, 578 F.3d 1130, 1133 (9th Cir. 2009) (holding that a lower court cannot apply the good faith exception to retroactive application of Gant and to a search invalidated by Gant).

Although the Court of Appeals for the Sixth Circuit has yet to address directly the issue of the remedy upon applying Gant retroactively, its decision in United States v. Dietz implies that it would permit the application of the good faith exception:

> In 1998, an unwarranted search incident to a custodial arrest constituted an exception to the warrant requirement of the Fourth Amendment where the search was necessary to assure an officer's safety or preserve evidence.  See United States v. Robinson, 414 U.S. 218, 235 . . . (1973).  Thus, at the time of the incident in question, police could lawfully search an arrestee and the area "within his immediate control"–meaning the area from which he might gain possession of a weapon or destructible evidence.  See Chimel v. California, 395 U.S. 752, 763 . . . (1969).  However, on April 21, 2009, the Supreme Court clarified its previous rulings on this issue.  See Arizona v. Gant, --- U.S. ----, 129 S. Ct. 1710, 1713 . . .(2009).  In Gant, the Court held that authorities may not conduct an

unwarranted search of the passenger compartment of a vehicle unless "it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest." Id. at 1713. Under Gant, the officers' warrantless search of Deitz's briefcase violated his Fourth Amendment rights because the officers had no reason to suspect that the briefcase contained evidence related to the offense of arrest–Deitz's failure to show proof of insurance. Nevertheless, at the time the officers stopped Deitz in 1998, they could lawfully search the articles within Deitz's control that might contain destructible evidence. See Chimel, 395 U.S. at 763 . . .; see also Atwater v. City of Lago Vista, 532 U.S. 318, . . . (2001) (holding that a custodial arrest for minor traffic infraction did not violate the Fourth Amendment). Therefore, no plain error occurred, **and Deitz's Fourth Amendment argument is without merit**.

United States v. Deitz, 577 F.3d 672, 687-88 (6th Cir. 2009) (emphasis added). This analysis from our appellate court suggests that both the constitutional rule of Gant as well as the remedy portion of the Fourth Amendment analysis applies to a pre-Gant search.

District Courts within the Sixth Circuit have subscribed to both views. The Middle District of Tennessee holds to the view that in cases involving searches violative of Gant, but conducted pre-Gant, the retroactivity doctrine prohibits the application of the good faith exception to the exclusionary rule. See United States v Buford, 623 F. Supp. 2d 923, 926 (M.D. Tenn. 2009) (determining that the good faith exception should not be applied as it is inconsistent with the proper application of, and effect to be given to, the retroactivity doctrine and because the good faith exception has not been extended by the Supreme Court to cases involving retroactivity, nor to an officer's good faith reliance on court decisions/case law).

In contrast, district courts in Tennessee, Ohio, and Michigan subscribe to the view that the retroactivity doctrine does not prohibit a court from applying the good faith exception to the exclusionary rule. United Sates v Bawgus, No 2:09-CR-60, 2010 WL_____, Doc. 49, p.14 (E.D.

Tenn. at Greenville, May 4, 2010); United Staes v McGhee, 672 F. Supp. 2d 804, 812 (S.D. Ohio 2009) (holding "the exclusionary rule should not be applied in this case, since, at the time of the events in question, the vehicle could have been legally searched pursuant to defendant's arrest under the existing precedent of the Sixth Circuit, and there is no evidence that the officers acted in bad faith in performing the search" but couching its holding in terms of retroactivity not applying vs applying the good faith exception); see also United States v. Peoples, 668 F. Supp. 2d 1042, 1050 (W.D. Mich. 2009) (holding retroactive application does not automatically preclude consideration of the good faith exception to the exclusionary rule but concluding that an officers' good faith reliance on existing case law precedent has not been, and should not be, permitted as an exception to the exclusionary rule). Moreover, the Court of Appeals for the Sixth Circuit remanded the Lopez case, in which it first applied Gant, but it did not automatically suppress the evidence, which further indicates that the appellate court would entertain an argument that the good faith exception undermines the need for suppression in certain cases. Lopez, 567 F.3d at 758. Upon remand, the Lopez district court apparently felt the same way, finding that the remand for further proceedings permitted it to consider the application of the good faith exception to the exclusionary rule. See United States v Lopez, 655 F. Supp. 2d 720, 731-32 (E.D. Ky. 2009). The Lopez district court went on to apply the good faith exception in denying the defendant's motion to suppress. See United States v Lopez, No. 6:06-120-DCR, 2009 WL 3112127, *4 (E.D. Ky. Sept. 23, 2009).

Gant itself gives little guidance on the issue. In its decision, the United States Supreme Court upheld the Arizona Supreme Court's decision that the search was unconstitutional and also affirmed the judgment of the Arizona high court, which had held that suppression of the evidence was appropriate. 129 S. Ct. at 1724; State v. Gant, 162 P.3d 640, 641 (2007). However,

the scope of review in <u>Gant</u> was explicitly limited to the constitutionality of the search.  <u>See</u> <u>United States v. Gant</u>, 552 U.S. 1230 (2008) (granting petition for writ of certiorari).  Thus, the United States Supreme Court neither reached nor even discussed  the issue of suppression or the interplay between retroactivity and the good faith exception to the exclusionary rule.

In the well- reasoned opinion in <u>United States v. Bawgus</u>, Judge Greer described the issue before the court as "whether or not a search which was perfectly legal when conducted in October, 2008, but which has subsequently became unconstitutional as the result of <u>Gant</u> requires suppression of the evidence seized in the search[.]"  No. 2:09-CR-60, 2010 WL____, at p.9 (applying a good faith analysis despite retroactivity).  More specifically, Judge Greer viewed the crux of the issue to be "whether a search conducted in good faith reliance on settled case law, but rendered unconstitutional by a change in that law, is subject to a good faith exception to the exclusionary rule."  <u>Id.</u>  Because the undersigned  adopts both the ruling and most of the reasoning in that case, a more thorough summary of that opinion follows.

In <u>Bawgus</u>, Magistrate Judge Dennis Inman found good faith was exercised by the officers because their search was clearly legal at the time it was conducted.  <u>Id.</u>  Nevertheless, Judge Inman recommended suppression based on his opinion that the "retroactivity doctrine" announced in <u>Giffith v. Kentucky</u>, 479 U.S. 314, 328 (1987), essentially trumps the good faith exception.  <u>Id.</u> at 10.  In so doing, he relied on the reasoning and rulings in <u>United States v. Gonzalez</u>, 578 F.3d 1130 (9th Cir. 2009), <u>United States v. Buford</u>, 623 F. Supp. 2d 923 (M.D. Tenn. 2009),and on <u>Gant</u>, to the extent its ruling ultimately resulted in suppression.  <u>Id.</u>  District Judge Greer began his analysis by confirming <u>Gant</u> applies retroactively per <u>Lopez</u>, and noted that the Sixth Circuit reversed **and** remanded the case back to the district court.  <u>Id.</u> at 11.  As previously noted above, the

district court in <u>Lopez</u>, following remand, ultimately permitted and then applied the good faith exception to the exclusionary rule so as to preclude suppression of the evidence. <u>Id.</u>; <u>see</u> <u>Lopez</u>, No. 6:06-120-DCR, 2009 WL 3112127, at *4. Judge Greer also noted that <u>Gant</u> did not consider this issue of whether suppression was the appropriate remedy. <u>Bawgus</u>, No. 2:09-CR-60, 2010 WL____, at p.11. That limitation on the Supreme Court's review was discussed above.

In <u>Bawgus</u>, Judge Greer then found that while the **rule** in <u>Gant</u> regarding the unconstitutionality of the search applied retroactively to the case, it still begged the question as to the proper **remedy** to apply. <u>Id.</u> He noted that these were two separate and distinct issues and that retroactive application of the **rule** did not automatically result in the **remedy** of suppression. <u>Id.</u> Judge Greer then examined the lack of a Sixth Circuit ruling and the circuit split on this issue. <u>Id.</u> at 12-13 (citing the Tenth Circuit in <u>McCane</u> and the Eleventh Circuit in <u>Davis</u> in support of applying the good faith exception and the Ninth Circuit in <u>Gonzalez</u> to the contrary). He also summarized the district court split within the Sixth Circuit on this issue. <u>Id.</u> at 13 (citing <u>Lopez</u> and <u>McGhee</u> in support of applying the good faith exception and <u>Buford</u> and <u>Peoples</u> to the contrary)[2].

After surveying the applicable case law, Judge Greer then analyzed the issue primarily by looking at the exclusionary rule and its deterrent purpose. <u>Id.</u> at 14-15. Judge Greer found that the officers in <u>Bawgus</u> acted in good faith in the sense that under the case law they relied upon at the time, their search was "clearly legal at the time it was conducted." <u>Id.</u> at 10. As such, he concluded that suppression of this evidence would have "absolutely no deterrent effect on police misconduct and is consistent with the Supreme Court's application of the good faith exception to

_____

[2]The Court would note that <u>Peoples</u>, CITE,both supports and opposes this issue, and that <u>McGhee</u>, CITE, supports the analysis but couches it in different terms.

the exclusionary rule over the past few years." Id. at 14.

The undersigned concurs with Judge Greer and likewise concludes that the good faith exception should apply along with the retroactive application of the constitutional rule of Gant. However, the Court would offer a little more in the way of legal analysis as additional support for this position and decision, namely that those courts concluding that suppression is somehow the "automatic" result upon the retroactive application of the constitutional rule in Gant are misguided in their analysis of retroactivity.

The Ninth Circuit in Gonzalez simply dismisses the good faith exception by stating the Supreme Court has not applied it to "a search conducted under a then-prevailing interpretation of a Supreme Court ruling, but rendered unconstitutional by a subsequent Supreme Court ruling . . . ."[3] 578 F.3d at 1132. The Ninth Circuit then concludes, based on the precedent of United States v. Johnson,457 U.S. 537, 562 (1982), and Griffith, that Gant, is to be applied retroactively. Gonzalez,578 F.3d at 1132. From this, the court simply concluded: "This precedent requires us to apply Gant to the current case without the overlay of an application of the good faith exception. To hold that Gant may not be fully applied here, as the government urges, would conflict with the Court's retroactivity precedents." Id. The Ninth Circuit then rationalizes that announcing a new rule without applying it would turn the Court into a legislative body announcing rules, rather than an adjudicative body deciding cases, and would violate the principal of treating similarly situated defendants the same. Id. Gonzalez further points out that Gant upheld the Arizona Supreme Court, which not only found the search at issue unconstitutional but also suppressed the evidence. Id.

---

[3]The Court will consider whether an officer's good faith reliance on existing case law can be a basis for the application of the good faith exception in part C below.

This final premise in <u>Gonzalez</u> is the most easily defeated: <u>Gant</u>, by virtue of the parameters of the order granting certiorari, was specifically limited to the issue of the constitutionality of the search, and did not reach the issue of the appropriate remedy. <u>Gant</u>, 552 U.S. at 1230. As such, in the case at bar, the rule in <u>Gant</u> is being "fully applied in this case," under the retroactivity precedent cited, but in acting as an "adjudicative body deciding cases," this Court must also decide the remedy. <u>Gonzalez</u> implies that the remedy is the exclusionary rule, which is applied automatically upon retroactivity, but the Ninth Circuit provides no legal support for this position.

The primary problem the undersigned sees in the decisions advocating an "automatic" suppression under the retroactivity doctrine is a failure to recognize the nature of the retroactivity rule. The retroactivity rule as applied herein, simply deems the search unconstitutional. At this juncture the Court must decide what remedy to apply. While many of the decisions and arguments focus on the government's desire to apply a good faith analysis, they all seem to overlook or subsume a missing step. Once it is deemed that a Fourth Amendment violation has occurred (i.e., that the search was unreasonable and unconstitutional) it does not mean that the exclusionary rule necessarily or automatically applies. This is precisely what <u>Herring v. United States</u>, 129 S.Ct. 695, 700 (2009), held, but is precisely the opposite of the decisions that preclude a good faith exception analysis. What these decisions miss is that after application of the retroactivity rule rendering the search unconstitutional, the next step is not to analyze the government's desire to apply the good faith exception against retroactivity, but to analyze the defendant's desire to invoke the remedy of suppression and, thus, the invocation of the exclusionary rule. Once this has been raised by the defendant, the Court as part of its remedy analysis, must not automatically invoke the exclusionary rule as the remedy, but must look to the limited use of the exclusionary rule, <u>see</u> <u>Hudson v.</u>

15

Michigan, 547 U.S. 586, 591 (2006) (holding that application of the exclusionary rule "has always been our last resort, not our first impulse"), the purpose for and limited application of, the exclusionary rule (only to deter police misconduct, Herring, 129 S. Ct. at 700), and the potential exceptions to the exclusionary rule (including the good faith exception, Id. at 701).

In this type analysis, there is no conflict with the retroactivity precedents, as the rule in Gant, is being "fully applied" to find this search violative of the Fourth Amendment. But to then "automatically" apply the exclusionary rule without analysis and to simply dismiss whether it should apply is contrary to this Court's understanding of Herring, United States v. Leon, 468 U.S. 897 (1984), and Illinois v. Krull, 480 U.S. 340 (1987).

The undersigned finds the Krull case constitutes an excellent review of the limits of the exclusionary rule. The exclusionary rule is a "judicially created remedy," not a "personal constitutional right of the party aggrieved." Krull, 480 U.S. at 347. The primary purpose of the exclusionary rule is the deterrent effect on future unlawful conduct, and the exclusionary rule should only be applied when and if the deterrent effect will be achieved. Id. at 349. In determining whether to apply the exclusionary rule, the Court should examine whether such application will advance the deterrent objective of the rule. Id. When an officer acts as a reasonable officer would under similar circumstances and in good faith, there is no misconduct or illegality and, thus, simply nothing to deter. Id. at 349-50.

District Judge Varlan's opinion in this case appears to support the methodology of this two-part analysis. In his Memorandum and Order [Doc. 27] in this case, Judge Varlan stated:

> In Lopez, the Sixth Circuit did not automatically order suppression as a result of its holding, even though it was on direct review. Lopez, 567 F.3d at 757-58. Instead, the Sixth Circuit remanded the case 'for further proceedings consistent with' its holding. Id. The Sixth

> Circuits holding in <u>Lopez</u> suggests that the Court should not mechanically suppress evidence as a direct result of the holding in <u>Gant</u>, but suggests to the Court that <u>Gant</u> should be applied to determine whether the search violated the Fourth Amendment. <u>See Id.</u>; <u>see</u> also <u>United States v. Peoples</u>, No. 1:09-CR-170, 2009 WL 3586564 (W.D. Mich., Oct., 2009).

[Doc. 27, p.11] Judge Varlan proceeds to note the Circuit split on this issue and that the district courts in the Sixth Circuit are also divided. [Doc. 27, p.12] His cites include <u>United States v. Lopez</u>, No. 6:06-120-DCR, 2009 WL 3112127 (E.D. Ky., Sept. 23, 2009), in which the district court, on remand, did consider the exclusionary rule, its purpose and the appropriateness of applying it, but held the good faith exception applied. Although Judge Varlan held, based on the record presently before him, that he could not determine the appropriateness of applying the good faith exception at that juncture, his opinion indicates that the good faith exception should be considered, along with the exclusionary rule, in determining the remedy to apply. [Doc. 27, p.13]

The Sixth Circuit opinions appear to support this methodology. First, <u>Lopez</u> suggests that suppression should not be automatically applied as the remedy for a retroactively applied rule, finding the search violated the Fourth Amendment. 567 F.3d at 757. Thereafter, <u>Dietz</u> held that the admission of evidence from a search that was legal in 1998, but subsequently rendered unconstitutional by <u>Gant</u>, was not plain error. 577 F.3d at 687-88 (reviewed under a plain error standard). Although the Sixth Circuit has not issued a definitive ruling on this issue, the undersigned believes that these cases indicate that the retroactive application of <u>Gant</u> does not result in the automatic exclusion of evidence. Rather, the Court must undertake an analysis of the appropriate remedy, including analyzing the exclusionary rule and the applicability of the good faith exception.

Finally, this Court finds that the United States Supreme Court's own opinions support this methodology. First, Justice O'Connor's dissent in <u>Krull</u>, which was joined by three other

justices, specifically addresses the interplay between the retroactivity rule and the exclusionary rule/good faith exception remedy. 480 U.S. at 368-69 (O'Connor, J., dissenting). The dissenters contend the majority holding in <u>Krull</u> is at odds with <u>Griffith</u> in that despite its retroactive application, it provides no effective remedy to the very defendant in whose case the statute was held unconstitutional. <u>Id.</u> at 368. The majority does not argue against that concern but simply notes the same concern existed in <u>Leon</u> and adds "the dissent offers no reason why this concern should be different when a defendant challenges the constitutionality of a statute rather than a warrant." <u>Id.</u>, at 354 n.11. Most notably with regard to the undersigned's two part analysis, differentiating between the retroactive application of the right/rule and the application of the remedy, Justice O'Connor acknowledges this two part analysis in stating that "the Court today, as it has done in the past, divorces the suppression remedy from the substantive Fourth Amendment right." <u>Id.</u> at 368 (O'Connor, J., dissenting). Accordingly, the Court concludes that Supreme Court precedent contemplates that when a constitutional rule is retroactively applied, the court will still undertake an analysis of the remedy to apply.

Guided by the reasoning in those cases that permit application of the exclusionary rule and its good faith exception retroactively, the Court agrees with the Government that both the constitutional rule of <u>Gant</u> and the remedy (the law concerning the exclusionary rule and its exceptions) apply retroactively.

### C. The Good Faith Exception

Having found that the exclusionary rule and its good faith exception may be considered in this case, the Court now turns to the basic questions of whether the good faith

exception applies as a matter of law and exists as a matter of fact in this case to prevent the suppression of the evidence unconstitutionally seized. The Defendant argues that the officer's "good faith" reliance on his own interpretation of case law is not a legitimate basis for applying the good faith exception. Instead, the good faith exception applies when an officer relies on a judicial or legislative determination, such as the issuance of a search warrant or the enactment of a statute. Second, the Defendant argues that Officer Headrick was not acting in good faith in searching his car. He contends that Officer Headrick's training improperly led him to an overly broad interpretation of the search incident to arrest law, contrary to Fourth Amendment case law (i.e., <u>Belton</u> and <u>Chimel</u>) and to the KPD's General Order on searching without a warrant.

The Government responds that the Tenth and Eleventh Circuits have properly determined that the exclusionary rule should not be applied when an officer acts in good faith reliance on pre-<u>Gant</u> case law. It does not respond to the Defendant's argument that Officer Headrick failed to follow Fourth Amendment case law or the KPD's General Order, except in its insistence that <u>Belton</u> authorized Headrick's search incident to arrest in this case and the <u>Gant</u> decision changed the constitutional rule of <u>Belton</u>.

Not every Fourth Amendment violation results in the exclusion of the evidence obtained. <u>See</u> <u>Herring</u>, 129 S. Ct. at 700. Exclusion of evidence is "a judicially created rule . . . 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" <u>Id.</u> at 699 (quoting <u>United States v. Calandra</u>, 414 U.S. 338, 348 (1974)). The exclusionary rule applies only where "its remedial objectives are thought most efficaciously served," <u>Evans</u>, 514 U.S. at 11, and where it "results in appreciable deterrence." <u>Herring</u>, 129 S. Ct. at 700 (quoting <u>United States v. Leon</u>, 468 U.S. 897, 909 (1984)) (internal quotation marks omitted). "[T]o the extent that

application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs." Herring, 129 S. Ct. at 700 (quoting Krull, 480 U.S. at 352-53). In the end, the decision to suppress evidence "turns on the culpability of the police and the potential for exclusion to deter wrongful police conduct." Id. at 698.

Thus, the courts have recognized that certain Fourth Amendment violations do not involve law enforcement officers' own misconduct and that excluding evidence in those cases would not deter wrongful police conduct. As such, a number of "good faith" exceptions to the exclusionary rule have developed. These include (1) reliance on a search warrant that is later found to be unsupported by probable cause, Leon, 468 U.S. at 922; (2) reliance on a search warrant that contains clerical errors, Massachusetts v. Sheppard, 468 U.S. 981, 991 (1984); (3) reliance on a statute with a constitutional defect that was not "sufficiently obvious," Krull, 480 U.S. at 349-50; and (4) reliance on mistaken data or information from a judicial employee, Arizona v. Evans, 514 U.S. 1, 15 (1995). See also Herring, 129 S. Ct. at 701. Admittedly, there is currently no recognized exception for reliance on "case law" or then-existing case law precedent or reliance on a widely-accepted interpretation of Supreme Court case law.

The district court in Peoples reasoned that creating such an exception for reliance on case law, "would for the first time permit use of illegally obtained evidence based on the good faith of the officer alone, unchecked by the judgment of either the legislature (as it was in Krull ) or the judiciary (as it was in Leon, Evans, and Herring). It would permit an officer to determine whether she has probable cause to search and then permit her unilateral determination to excuse suppression even after a court determines the search to have violated the Fourth Amendment." 668 F. Supp. 2d at 1048.

The Court respectfully disagrees with this analysis for several reasons. First, to permit the use of this evidence, the officers' good faith is measured by an objective standard, not the subjective belief "of the officer alone." Second, the officer's good faith in this situation was "checked" by the judiciary prior to the search, based on the Supreme Court's "bright line" ruling in <u>Belton</u> twenty-nine years ago, the Sixth Circuit's rulings in <u>United States v. White</u>, 871 F.2d 41, 44 (6th Cir. 1989), and its progeny following this "bright line" over the intervening years, and the widespread rulings across the country evidencing acceptance of the same interpretation of <u>Belton</u>. Thus, at the time of the instant search, federal judges at all levels had essentially told law enforcement that such searches incident to arrest were legal. The undersigned views this as a greater "checking" than reliance on one search warrant or one statute.

Furthermore, the good faith of the officer is "checked" after the fact in that the officer must establish an objectively reasonable good faith reliance, to be decided by a judge, not the officer. Every day, officers are required to determine if a search is proper and if they have probable cause based on how the facts presented mesh with their understanding of then-existing case law precedent. If they are wrong, inevitably a motion to suppress is filed and the evidence is likely excluded under the exclusionary rule for violating the Fourth Amendment and to deter such errors/misconduct in the future. But if the officers are correct and the search was legally proper, the search is invariably upheld and the evidence is not suppressed. The ruling in <u>Peoples</u> and in those cases that would deny application of the good faith exception to the exclusionary rule in pre-<u>Gant</u> search cases effectively says to the officer involved that although he or she was following the law as it had been consistently given and repeated for decades, the court must now exclude this evidence under a rule that is designed to deter the officer from such further "misconduct" because a bare

majority of the Supreme Court decided to change that law almost thirty years later. The officer will presumably infer that the court needs to deter his or her "misconduct" in following a longstanding law and making a then-legal search, because the officer should have known the Supreme Court would overrule that law someday. The Court fails to see either the logic in, or a legal basis for, denying the Government an opportunity to present a good faith argument, particularly in light of the limited use of the exclusionary rule and the merits of an objective good faith argument. In this case, the undersigned is persuaded to allow such argument.

In <u>Buford</u>, the district court started with the correct statement of the law per <u>Herring</u>: "The fact that a Fourth Amendment violation occurred (i.e., that a search or arrest was unreasonable), does not necessarily mean that the exclusionary rule applies. Indeed, exclusion has always been our last resort." <u>Buford</u>, 623 F. Supp. 2d at 925 (citing <u>Herring</u>, 129 S. Ct. at 700). The <u>Buford</u> opinion further correctly states that before exclusion is warranted, the officers have to know or be charged with knowledge that the search was unconstitutional, and where the officers justify the search by the good faith exception (i.e., reliance on "a later invalidated proposition or document"), suppression may not be warranted because the goal of the exclusionary rule, to deter officer misconduct, is "not served by excluding evidence submitted by officers acting in good faith." <u>Id.</u> at 925. However, <u>Buford</u> then dismisses the application of the good faith exception to cases when "the officers were allegedly relying on a body of case law governed by the United States Supreme Court," because the Supreme Court has not indicated the good faith exception should be extended into the realm of Supreme Court jurisprudence. <u>Id.</u> at 925; <u>see also</u> <u>Gonzalez</u>, 578 F.3d at 1132 (dismissing the good faith exception by merely stating that the Supreme Court has not applied it to an officer's reliance on current case law that is subsequently overturned).

Although the <u>Buford</u> court notes that the core issue is the "interplay between the retroactivity doctrine as applied to Supreme Court jurisprudence and the good faith exception," the court does not actually attempt to resolve the legal question this interplay presents. <u>Id.</u> at 926 n.2. Rather, the court argues against the application of the good faith exception by contending it would lead to "perverse results." <u>ID.</u> At 926. It opines that the defendant in <u>Gant</u> and similarly situated defendants would only be entitled to "hollow relief" by prevailing on the issue of the unconstitutionality of the search, while the evidence is not suppressed because it was obtained due to the officers' good faith reliance on <u>Belton</u>. <u>Id.</u> On the other hand, defendants arrested after the <u>Gant</u> decision would be entitled to suppression because <u>Gant</u> would eliminate the good faith argument. <u>Id.</u>

Although an appeal to prevent this disparity is attractive at first blush, the Court finds that this reasoning does not ring true. The issue of exclusion should not be decided based upon whether different results will potentially occur in different cases but rather upon the propriety of determining what remedy does apply. In the situations the <u>Buford</u> court described above, the results might differ, but only because in the latter case, the government would be unable to prove the good faith exception, not because <u>Gant</u> eliminated it as an argument.

In essence, <u>Peoples</u>, <u>Buford</u>, and <u>Gonzalez</u> hold that cases that have recognized the good faith exception to the exclusionary rule have not extended that exception to situations in which officers act in "reliance on decisions on the United States Supreme Court that were reversed or overturned while the defendant's case was on review." <u>Buford</u>, 623 F. Supp. 2d at 927. This Court agrees that such an extension has not yet occurred, but the issue for the Court is to decide whether it should occur and whether there is a basis for determining that it would occur. That it should and

likely will occur is borne out by analyzing the rulings of the Supreme Court and Sixth Circuit.

The Supreme Court's decision in <u>Gant</u> itself suggests that reliance on established case law can be a basis for finding an officer acted in good faith. In <u>Gant</u>, the Supreme Court observed that "[b]ecause a broad reading of <u>Belton</u> has been widely accepted, the doctrine of qualified immunity will shield officers from liability for search conducted in reasonable reliance on that understanding." 129 S. Ct. at 1723 n.11. Thus, the Supreme Court notes that despite any retroactive application of <u>Gant</u>, in a civil suit, the officers can raise and will be shielded by the doctrine of qualified immunity. The significance of this statement lies in the interplay between suppression analysis and qualified immunity analysis in prior decisions of the Supreme Court and the Sixth Circuit. In <u>Malley v. Briggs</u>, a civil rights case involving the issue of qualified immunity, the Supreme Court held "that the same standard of objective reasonableness that we applied in the context of a suppression hearing in <u>Leon</u>, supra, defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest." 475 U.S. 335, 344 (1986); <u>see also</u> <u>Groh v. Ramirez</u>, 504 U.S. 554, 565 n.8 (2004).

The Sixth Circuit adopted this same position in <u>Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco, and Firearms</u>, noting that "the <u>Leon</u> good-faith inquiry and the qualified immunity inquiry are one and the 'same.'" 452 F.3d 433, 448 (6th Cir. 2006) (citing with approval footnote 8 in <u>Groh</u>), <u>cert. denied</u>, 549 U.S. 1321 (2007); <u>see also</u> <u>United States v. Warson</u>, 498 F.3d 429, 432 (6th Cir. 2007). <u>Baranski</u> also serves as a reminder that qualified immunity is based on whether a constitutional right was "clearly established" or whatever case law precedent squarely governs the case. <u>Id.</u> at 447. Judges deciding the application of qualified immunity look at whether a law was clearly established from case law such that no objectively reasonable officer

would have violated it.  <u>See</u> <u>id.</u> at 438.  If the law violated meets this standard (i.e., was clearly established such that no reasonable officer would have violated it), a defendant officer is not entitled to qualified immunity.  <u>Id.</u>  Conversely, if, as here, the case law (i.e., <u>Belton</u> and its progeny) was clearly established and widely accepted and a reasonable officer would have followed it, the officer following the law is entitled to qualified immunity, precisely as Justice Stevens noted in <u>Gant</u>.  In fact, qualified immunity has specifically been granted to officers conducting a search pursuant to <u>Belton</u>.  <u>See</u> <u>Meadows v. Thomas</u>, 117 Fed. Appx. 397, 404 (6th Cir. 2004).  Thus, under a qualified immunity analysis, the officers are judged by the standard of objective reasonableness with regard to their understanding of case law precedent.

The Court sees no reason that an officer's objective reasonableness in relying on case law can be considered in a civil context (qualified immunity) and not a criminal context (good faith), when the standards are the same.  It stands to reason that the good faith exception should apply to an officer's reliance on well-established case law in this case because at the time of the instant search, (1) it was objectively reasonable to rely on the clearly established law and widely accepted interpretations of <u>Belton</u> for qualified immunity purposes, (2) the qualified immunity analysis/inquiry and the <u>Leon</u> good faith analysis/inquiry are one and the same, and (3) per <u>Gant</u>, qualified immunity is applicable to these officers.  It also follows that because the qualified immunity exception relies on an officer's objectively reasonable understanding of the law as based on case law precedent at the time of the search, that the good faith exception per <u>Leon</u>, <u>Herring</u>, and <u>Krull</u> would likely be extended to include reliance on the Supreme Court's ruling in <u>Belton</u> and widely-accepted circuit interpretations of <u>Belton</u>.  Finally, the Court observes that this extension seems quite logical given that officers rely on the current state of the law as expressed in case law

precedent in order to perform legal warrantless searches as much as and more often than they do on search warrants issued by magistrate judges and/or on statutes. The Court concludes that an officer's good faith reliance on established case law supports the application of the good faith exception in this case.

The Defendant also argues that Officer Headrick did not conduct the instant search incident to arrest in good faith because his training improperly led him to an overly broad interpretation of the search incident to arrest law, contrary to both Fourth Amendment precedent (i.e., Belton and Chimel) and to the KPD's General Order on searching without a warrant. The Court has already found that the search of a passenger compartment incident to a custodial arrest, even when the defendant is detained out of reach of the vehicle, was a well-established exception to the warrant requirement in this jurisdiction at the time of the instant search. See White, 871 F.2d at 44 (upholding a search incident to arrest when the defendant was handcuffed and detained in patrol car). Officer Headrick testified that based upon his training, he believed that he had the authority to search the passenger compartment of the Defendant's car incident to the driver's arrest. The Court finds that it was objectively reasonable for an officer to rely upon the then-existing case law on search incident to arrest. As such, Officer Headrick acted in good faith in searching the Defendant's car, and the evidence gained from this search should not be suppressed. As discussed above, the ultimate determination of whether to exclude evidence resulting from an unconstitutional search "turns on the culpability of the police and the potential for exclusion to deter wrongful police conduct." Herring, 129 S. Ct. at 698. Neither of those prongs justifies exclusion of the evidence in this case.

## V. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds that the search of the Defendant's car was unconstitutional pursuant to the holding in <u>Arizona v. Gant</u>. Despite this constitutional violation, the Court finds that suppression of the evidence is not warranted under the exclusionary rule because the searching officers acted in good faith, relying on established case law to conduct a search incident to the arrest of the driver. For the reasons set forth herein, it is **RECOMMENDED** that Defendant's suppression motion [**Docs. 31**] be **DENIED**.[4]

Respectfully submitted,

<u>    s/ C. Clifford Shirley, Jr.    </u>
United States Magistrate Judge

---

[4]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); <u>see</u> <u>United States v. Branch</u>, 537 F.3d 582, 587 (6th. Cir. 2008); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide <u>de novo</u> review where objections to this report and recommendation are frivolous, conclusive, or general. <u>Mira v. Marshall</u>, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).